Robert Lee PANKOW, individually and as Guardian for Robert Lynn Pankow, Plaintiffs/Appellees,

v.

Bobby MITCHELL, individually and d/b/a B & S Used Cars, Defendant/Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 26, 1987.

Application for Permission to Appeal Denied by Supreme Court Sept. 28, 1987.

Mark Fishburn, Joe Bednarz, Bednarz & Fishburn, Nashville, for plaintiffs/appellees.

John T. Gwin, Mt. Juliet, for defendant/appellant.

## OPINION

KOCH, Judge.

This appeal involves an action for damages caused by the explosion of a used car's radiator. The purchaser of the car filed the action in the Circuit Court for Davidson County against the dealer who sold him the car alleging that the dealer's negligent repair of the radiator had caused it to explode. The dealer denied liability insisting that the radiator had been altered after he sold the car and that the injuries sustained by the purchaser and his son were the result of their own negligence. During the trial, the defendant attempted to introduce a complaint the purchaser and his son had filed against another defendant. The trial court held that this complaint was hearsay and declined to admit it. Thereafter, the jury returned a verdict for the purchaser and his son for compensatory and punitive damages.

The used car dealer has perfected this appeal. He insists that the trial court erred by refusing to permit him to introduce a copy of the complaint the plaintiffs had filed in an earlier proceeding. We have concluded that the trial court's exclusion of this evidence was error, and, therefore, we vacate the judgment and remand the case for a new trial.

### I.

Robert Lee Pankow purchased a used 1974 Hornet station wagon from Bobby Mitchell in September, 1982. He returned the vehicle three days later complaining that the transmission hesitated. Mr. Mitchell instructed one of his mechanics to test drive the car. The mechanic damaged the vehicle's radiator during the test drive.

Mr. Pankow agreed to accept another used car in exchange for the 1974 Hornet. However, he returned this car to Mr. Mitchell a few days later complaining that its brakes were faulty. Mr. Pankow told Mr. Mitchell that he wanted the 1974 Hornet. Mr. Mitchell told him that he had been unable to locate a Hornet radiator to replace the one that had been damaged several days earlier. However, he told Mr. Pankow that his mechanic could install another radiator which would be satisfactory. Mr. Pankow agreed.

Mr. Pankow returned later in the day to pick up the Hornet station wagon. Mr. Mitchell told him that the radiator had been repaired. He lifted the hood of the car and showed Mr. Pankow where the radiator had been secured to the top of the engine

compartment with wire. Mr. Pankow accepted the car without inspecting it further.

Two days later, Mr. Pankow noticed a large amount of water under the station wagon. He and his seventeen year old son drove the car to a service station owned by his brother-in-law, George Kopulos. Mr. Kopulos drove the car into the garage's repair bay and placed it on an hydraulic lift. The car's radiator hose burst soon after it was raised on the lift.

Mr. Pankow and his son were hit by the pressurized hot water from the radiator. Mr. Kopulos described how the radiator hose "flipped around like a wild piece of garden hose" when the faulty fitting broke loose. Mr. Pankow received burns on his right shoulder and both arms. His son received second degree burns over twenty-eight percent of his body requiring him to spend approximately three weeks in the hospital. The son's hospital and medical bills exceeded $11,000.

Mr. Pankow filed an action against Mr. Mitchell in the Circuit Court for Davidson County on behalf of himself and his son. Approximately a year later, while the action against Mr. Mitchell was pending, Mr. Pankow and his son filed a second action in the Circuit Court for Robertson County against Mr. Kopulos. They dismissed this action voluntarily three months after it was filed pursuant to Tenn.R.Civ.P. 41.

The action against Mr. Mitchell was tried for the first time in the Third Circuit Court for Davidson County in March, 1985. The jury's verdict for the plaintiffs was set aside when the trial court granted Mr. Mitchell's motion for a new trial. The case was thereafter transferred to the Sixth Circuit Court for Davidson County where it was tried for the second time in February, 1986.

Mr. Mitchell had two theories of defense in this proceeding. First, he claimed that the radiator had been altered after he had sold the car to Mr. Pankow. Second, he asserted that Mr. Pankow and his son were contributorily negligent because they were standing underneath the car when the radiator hose burst. Mr. Pankow and his son insisted that they had not altered the radiator after Mr. Mitchell sold them the car. They also insisted that they were not standing underneath the car at the time of the accident.

At trial, Mr. Mitchell sought to introduce the complaint Mr. Pankow and his son had filed against Mr. Kopulos in the Circuit Court for Robertson County. This complaint alleged:

4. That on the aforementioned date, while the vehicle was on the hydraulic jack, the Plaintiffs and the Defendant were all underneath the automobile when suddenly a hose on the automobile burst, and scalding water fell on both Plaintiffs, injuring them severely.

5. That the Defendant was negligent by allowing the Plaintiffs to enter the service area and get underneath the vehicle.

6. That the Defendant violated the standard of care required of service station operators, by failing to keep the Plaintiffs out of the service area, although he was fully aware of the dangers presented thereby.

The trial court conducted a hearing out of the presence of the jury concerning the admissibility of this complaint.[1] It determined that the Robertson County complaint was inadmissible hearsay because it was not verified under oath.

While the jury was still out, the trial court informed counsel for Mr. Mitchell that he could attempt to impeach Mr. Pankow's son's testimony using the allegations in the Robertson County complaint as a

1. The admissibility of this complaint was also discussed at a pre-trial conference held on the morning of the trial. There is no record of this conference nor was an order entered as required by Tenn.R.Civ.P. 16 embodying the action taken at the conference. Apparently the trial court ruled that the complaint was inadmissible. We have no reliable way to determine the basis of the trial court's decision. The ground stated in the Pankows' motion in limine that the pleadings' probative value is outweighed by their prejudicial effect was insufficient. Thus, we must conclude that the Pankows made a more proper objection during the pretrial conference.

prior inconsistent statement. Counsel for Mr. Mitchell attempted to do so; however, Mr. Pankow's son denied any knowledge of the filing of this complaint because he "was in the hospital."[2] Upon hearing this statement, the trial court stated: "That kind of ends that line of questioning." The trial proceeded without the jury ever hearing about the Robertson County complaint or its contents.

## II.

*Allegations in Pleadings as Admissions*

■ An admission is an oral or written extrajudicial declaration made by or attributable to a party. *Jones v. Lenoir City Car Works,* 216 Tenn. 351, 356, 392 S.W.2d 671, 673 (1965). It is admissible against the party making it both as substantive evidence and for the purpose of impeachment. *Goodman v. Balthrop Construction Co.,* 626 S.W.2d 21, 25 (Tenn.Ct.App. 1981); *Puckett v. Laster,* 56 Tenn.App. 66, 74–75, 405 S.W.2d 35, 39 (1965). *See also* 31A C.J.S. *Evidence* § 317, at 808–09 (1964).

■ An extrajudicial declaration need not be made by the party himself in order to be an admission. An agent's declaration may be attributable to the principal if the agency relationship existed before the declaration was made and if the agent was acting within the scope of his authority. *Cobb, Welsh & Co. v. Johnson,* 34 Tenn. (2 Sneed) 73, 80 (1854); *Forde v. Fisk University,* 661 S.W.2d 883, 886 (Tenn.Ct.App. 1983); *Thurmer v. Southern Railway Co.,* 41 Tenn.App. 354, 363–64, 293 S.W.2d 600, 604 (1956). See also 4 J. Wigmore, *Evidence in Trials at Common Law* § 1078, at 176 (Chadbourn Rev.1972) and D. Paine, *Tennessee Law of Evidence* § 56, at 62–63 (1974).

An attorney is the agent of his client for the management of the legal affairs he has been retained to handle. Thus, an attorney's factual statements made on a client's behalf in a letter or during pretrial pro-

ceedings or the trial itself have been found to be admissions. *Garland v. Seaboard Coastline Railroad Co.,* 658 S.W.2d 528, 531 (Tenn.1983) (during hearing on pretrial motion); *Pewitt v. Pewitt,* 192 Tenn. 227, 241–42, 240 S.W.2d 521, 527 (1951) (during trial); *Wilkerson v. Williams,* 667 S.W.2d 72, 78 (Tenn.Ct.App.1983) (letter).

■ Pleadings prepared and filed by counsel hired by a party are prima facie regarded as being authorized by the party. Thus, factual statements contained in pleadings filed on behalf of a party may be considered as admissions. See E. Cleary, *McCormick's Handbook of the Law of Evidence* § 265, at 783–84 (3d ed. 1984). Factual statements in pleadings are conclusive against the pleader in the proceedings in which they were filed until they have been amended or withdrawn. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 642 S.W.2d 151, 152 (Tenn.Ct.App. 1982). While they lose their conclusive character once they have been amended or withdrawn, they continue to be evidentiary admissions which may be refuted or explained by the party against whom they are used.

■ In the same manner, statements contained in pleadings filed in other actions may also be used as evidentiary admissions as long as they are inconsistent with the party's present contentions. *Williams v. Union Carbide Corp.,* 790 F.2d 552, 555–56 (6th Cir.1986). *See also* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 265, at 784 (3d ed. 1984); 4 J. Wigmore, *Evidence in Trials at Common Law* § 1066, at 80 (Chadborn Rev. 1972); 2 S. Gard, *Jones on Evidence* § 13:40, at 503 (6th ed. 1972); 29 Am.Jur.2d *Evidence* § 696 (1967). These admissions are not conclusive. However, they may be received into evidence against the pleader on the trial of another action to which he is a party as long as the statement is relevant and material to the issues being tried. *Payton Health Care Facilities, Inc. v. Estate of Campbell,* 497 So.2d 1233, 1238

---

**2.** This statement was patently erroneous. Bobby Pankow was hospitalized for approximately three weeks following the accident. The com-

plaint against Mr. Kopulos was filed almost a year later.

(Fla.Dist.Ct.App.1986); *Bruce E.M. v. Dorothea A.M.,* 455 A.2d 866, 869 (Del.1983); *Glover v. Grogan,* 162 Ga.App. 768, 292 S.E.2d 465, 468 (1982); *Bartsch v. Gordon N. Plumb, Inc.,* 138 Ill.App.3d 188, 92 Ill. Dec. 862, 869, 485 N.E.2d 1105, 1112 (1985); *City of College Station v. Seaback,* 594 S.W.2d 772, 777–78 (Tex.Civ.App.1979). See also 31A C.J.S. *Evidence* §§ 303a & 381f (1964).

■ Statements contained in pleadings filed in prior actions remain admissible even though the action in which they were filed has been withdrawn or dismissed. *Ellis v. Race,* 398 P.2d 805, 808 (Okla.1965). They are also admissible even though the pleading in which they were contained was not verified. *Bowers v. Potts,* 617 S.W.2d 149, 154 (Tenn.Ct.App.1981). *See also Staples v. Hoefke,* 189 Cal.App.3d 1397, 235 Cal.Rptr. 165, 175 (1987); *Grass v. Hill,* 94 Ill.App.3d 709, 50 Ill.Dec. 139, 144, 418 N.E.2d 1133, 1138 (1981); 29 Am.Jur.2d *Evidence* § 691 (1967). The party who made the admission may give evidence that the pleading was filed on incorrect information or without his actual knowledge. However, this evidence goes only to the weight, not the admissibility, of the pleading. E. Cleary, *McCormick's Handbook of the Law of Evidence* § 265, at 784 (3d ed. 1984).

### III.

### *A Party's Admission as Hearsay*

■ The cases in Tennessee concerning whether a party's admission is hearsay are ambiguous. Historically, these statements were considered hearsay but were admissible as an exception to the hearsay rule. *Harry Levitch Jewelers, Inc. v. Jackson,* 573 S.W.2d 746, 747 (Tenn.1978). See also D. Paine, *Tennessee Law of Evidence* § 54, at 57 (1974). However, in 1980, the Tennessee Supreme Court, citing Rule 801(d)(2) of the Federal Rules of Evidence, held that a party's admission was not hearsay. *State v. Jones,* 598 S.W.2d 209, 223 (Tenn. 1980). Notwithstanding this decision, the intermediate appellate courts have still treated admissions as exceptions to the hearsay rule, apparently with the Tennessee Supreme Court's approval. *State v. Mathis,* 702 S.W.2d 179, 182 (Tenn.Crim. App.1985); *Forde v. Fisk University,* 661 S.W.2d 883, 886 (Tenn.Ct.App.1983).[3] We are bound to follow the Tennessee Supreme Court's decisions. *Barger v. Brock,* 535 S.W.2d 337, 341 (Tenn.1976); *World Secret Service Association v. Travelers Indemnity Co.,* 55 Tenn.App. 122, 134, 396 S.W.2d 848, 853–54 (1965). Thus, we conclude that a party's extrajudicial admissions contained in a pleading filed in another action are not hearsay when they are introduced against the party.

■ The factual statements contained in the complaint Mr. Pankow and his son filed against Mr. Kopulos meet all the criteria for admissibility. They were prepared by counsel retained to represent Mr. Pankow and his son. They are ostensibly based on facts that only Mr. Pankow and his son could have provided. They are also inconsistent with their testimony at trial that they were not standing underneath the car when the radiator hose burst. The position of Mr. Pankow and his son at the time of the accident is material to Mr. Mitchell's contributory negligence defense. Thus, the trial court erred when it ruled that the complaint filed against Mr. Kopulos was inadmissible because it was hearsay.

### IV.

### *The Effect of the Exclusion of the Evidence*

The trial court's erroneous exclusion of the complaint Mr. Pankow and his son filed against Mr. Kopulos does not necessarily require reversal of the judgment. In accordance with Tenn.R.App.P. 36(b), the judgment should be set aside only if, considering the whole record, the error more probably than not affected the outcome of the trial.

---

**3.** The Tennessee Supreme Court denied Tenn.R. App.P. 11 applications for permission to appeal in these cases, thereby indicating its approval in the reasoning and the results of the two opinions. *Spalding v. Davis,* 674 S.W.2d 710, 715 (Tenn.1984).

■ A trial court's erroneous exclusion of competent evidence will not require reversal if it did not affect the jury's verdict. *Belote v. Memphis Development Co.,* 51 Tenn.App. 423, 443, 369 S.W.2d 97, 105–06 (1962). It will likewise not require reversal if the excluding evidence would not have strengthened the appellant's position, *American National Bank & Trust Co. v. Mander,* 36 Tenn.App. 220, 234–35, 253 S.W.2d 994, 1000 (1952), or if the substance of the excluded evidence got to the jury through another source. *Tibbs v. Ake,* 505 S.W.2d 232, 236 (Tenn.1974); *Murray v. City of Nashville,* 42 Tenn.App. 161, 170, 299 S.W.2d 859, 863 (1956).

■ Where Mr. Pankow and his son were standing when the radiator hose burst was a contested issue in the trial. It was material because Mr. Mitchell asserted that the Pankows were negligent because they were standing under the car when the radiator hose burst. The wisdom of their doing so is open to question since both Mr. Pankow and his son insisted that they had no mechanical skills and were not involved in repairing the automobile.

The only evidence the jury heard on this issue was the testimony of Mr. Pankow, his son, and Mr. Kopulos. These witnesses stated that they were standing next to the car and not underneath it at the time of the accident. As a result of the trial court's exclusion of the pleadings in the action the Pankows had filed against Mr. Kopulos, the jury never knew that the Pankows had insisted in an earlier proceeding that they had been standing underneath the car when the radiator hose burst.

The conflict between the Pankows' testimony at trial and their allegations in the earlier lawsuit against one of their own witnesses bears upon their credibility. Had the jury been permitted to hear this testimony, it could have concluded not only that the Pankows were not credible witnesses but also that Mr. Pankow and his son were standing underneath the car when the radiator hose burst. Had the jury determined that the Pankows were standing underneath the car, it could also have found that the Pankows were negli-

gent and that their negligence contributed to the injuries they sustained. This finding would more likely than not have affected the outcome of the trial. Therefore, we have concluded that the trial court's exclusion of the admissions contained in the earlier pleadings filed by Mr. Pankow and his son was not harmless error.

V.

The judgment of the trial court is vacated and the case is remanded for a new trial. The costs of this appeal are taxed against Robert Lee Pankow and Robert Lynn Pankow and their surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.